IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

RANDALL MCELHANEY,

       Plaintiff,

v.                                     Civil Action No. 1:15-CV-204

SBA COMMUNICATIONS CORP.,
SBA TOWERS, LLC,
SBA INFRASTRUCTURE, LLC,
SBA NETWORK SERVICES, LLC,
FDH VELOCITEL, FDH ENGINEERING, INC.,
FDH INNOVATION and FDH, INC.,

       Defendants.

And

FDH, INC., now known as KCHM, INC.,
And FDH ENGINEERING, INC., now
Known as KCHM and ASSOCIATES, INC.,

       Third-Party Plaintiffs,

v.

S&S COMMUNICATIONS SPECIALISTS,
INC., THE ESTATE OF KYLE
KIRKPATRICK, JERRY HILL and THE
ESTATE OF TERRY LEE RICHARDS, JR.,

       Third-Party Defendants,

And

VELOCITEL, INC. d/b/a FDH VELOCITEL,

       Third-Party Plaintiff,

v.

THE ESTATE OF TERRY LEE RICHARD, JR.,
THE ESTATE OF KYLE KIRKPATRICK, and
JERRY HILL,

       Third-Party Defendants.

4

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF VELOCITEL, INC. d/b/a FDH VELOCITEL

COMES NOW the Defendant and Third-Party Plaintiff, Velocitel, Inc. d/b/a FDH Velocitel, (herein referred to as "Velocitel"), by its undersigned counsel and the law firms of Flaherty Sensabaugh Bonasso, PLLC, and McNeer, Highland, McMunn & Varner, L.C., to hereby assert that no genuine issue of material fact exists as to the lack of liability attributable to Velocitel in this case. Velocitel was neither actively negligent, nor liable to the Plaintiff pursuant to a successor liability theory, and therefore, Velocitel moves this Honorable Court for judgment as a matter of law pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## STATEMENT OF FACTS

FDH Engineering, Inc. and FDH, Inc. (now KCHM, Inc. and KCHM and Associates, Inc.), collectively hereafter referred to as "Old FDH Entities," were companies providing engineering and construction management services, respectively, to clients in the commercial, governmental, industrial, and telecommunications markets. See Third-Party Complaint, ¶10 (*Docket 8*). As part of their business, the Old FDH Entities entered into contracts with construction companies to implement structural modifications to existing and operational cell phone towers owned and operated by third parties. Id. at ¶11. Velocitel, L.L.C. would eventually enter into an Asset Purchase Agreement (the "APA") with the old FDH Entities, to be discussed further, *infra*. Pursuant to this Agreement, the Old FDH Entities became KCHM Inc. and KCHM and Associates Inc. (collectively "KCHM").

S&S Communications Specialists, Inc. ("S&S") owned and/or operated a construction company, and the Old FDH Entities and Defendant S&S entered into a

5

written agreement captioned "Master Subcontract Agreement," the latest version dated May 9, 2013 (the "Master Subcontractor Agreement"). Id. at ¶13. A true and accurate copy of the Master Subcontractor Agreement is attached hereto as **Exhibit 1** and is incorporated by reference as if set forth verbatim herein. Subject to the Master Subcontractor Agreement, FDH and Defendant S&S contracted for S&S to perform certain structural modifications to a cell phone tower (the "Tower") at a site known as "Despard (Tower One)," located at 9141 Murphy Road, Clarksburg, West Virginia. The Tower was owned by SBA Communications Corporation and/or an affiliate thereof ("SBA"). See First Amended Complaint (*Docket 1-2*), ¶¶ 1 and 3. The Old FDH Inc. was the construction manager for the structural modifications project. See Third-Party Complaint, at ¶12. At all relevant times, as part of the Project. See Third-Party Complaint, ¶14.

Following S&S's bid for the Project, S&S was issued Subcontract Number T-1305631700 regarding the project, which is dated November 12, 2013 and which is in the amount of $242,982.00 (the "Subcontract"). A true and accurate copy of the Subcontract is attached hereto as **Exhibit 2** and incorporated by reference as if set forth verbatim herein. Both of these documents were filed with this Court as attachments to KCHM's Answer (*Docket 7*). The Master Subcontractor Agreement and the Subcontract are collectively referred to herein as the "Contract."

On Saturday, February 1, 2014, S&S had one of its field crews performing work on the Tower, including the removal and replacement of steel support beams, or "diagonals." See Third-Party Complaint, ¶21. S&S's field crew working on the Project at the Tower site that day consisted of six (6) S&S employees: James Kenneth White, Joe

Neel, Terry Richards, Kyle Kirkpatrick, Jerry Hill, and Randall McElhaney. The crew foreman/supervisor for the Project that day was James Kenneth White. Id. On February 1, 2014, employees of S&S removed at least five (5) diagonals from the Tower at one time, removing two diagonals each on two sides of the Tower, and a fifth diagonal from the third side of the Tower. Removing these diagonals also involved unbolting and loosening the diagonals above and below them. Id. at ¶24. While they were doing so, the Tower collapsed. Id. at ¶26.

The Plaintiff sued FDH Velocitel, FDH Engineering, Inc., FDH Innovation, FDH, Inc., and SBA. See First Amended Complaint. The Old FDH Entities and Velocitel have alleged that acts and/or omissions of S&S and its employees while working on the Tower resulted in the deaths of S&S's employees Terry Richard and Kyle Kirkpatrick, and caused injuries to S&S's employees Jerry Hill and Randall McElhaney. See Third-Party Complaint, at ¶50. (The Plaintiff also alleged that acts and/or omissions of S&S and/or its employees while working on the Tower destroyed the Tower and damaged and/or destroyed telecommunications equipment located on it. Id. at ¶30.)

In Paragraph 5 of the First Amended Complaint, the Plaintiff asserts:

> FDH Engineering, Inc., FDH Innovation[1], and FDH, Inc., were, at the time of the collapse of the Despard Tower, corporations engaged in the business of engineering in West Virginia. They provided engineering, construction and field inspection services to the tower industry, including SBA. In 2013, these entities were purchased by Velocitel, Inc., which is now incorporated as FDH Velocitel. FDH Velocitel is liable for the tortious conduct of FDH Engineering, Inc., FDH Innovation and FDH, Inc. These four defendants are referred to herein jointly as "FDH."

See First Amended Complaint, ¶5 (Docket 1-2).

---

[1]   This entity has since been dismissed.

This is the only reference to Velocitel in the entire First Amended Complaint. In response these allegations, Velocitel stated that it had absolutely nothing to do with the Tower or S&S at any time either before or after the collapses of the Tower. See Answer, ¶2. It was more than one year after the collapse of the Tower and the Plaintiff's injuries that Velocitel purchased certain assets of the Old FDH Entities, pursuant to an Asset Purchase Agreement (the "APA") executed between them. Id.  The effective date of the APA is February 13, 2015, not 2013, as alleged by Plaintiffs.  A true and accurate redacted copy of the APA is attached hereto as **Exhibit 3** and is incorporated by reference as if set forth verbatim herein.[2] Per the APA, the Purchaser of the assets (*i.e.*, Velocitel) expressly did not assume any liability regarding the collapse of the Tower. Among other liabilities, pursuant to the "Excluded Liabilities" Paragraph of the APA:

> [] Except as set forth in Section 2.1(d) above, the Purchaser shall not assume or become liable for, and shall not be deemed to have assumed or have become liable for, any of the following liabilities of the Sellers or Stockholders (collectively, the "Excluded Liabilities").
>
> **(iv) any liability related to (1) the tower collapses occurring on February 1, 2014 in Despard West Virginia (the West Virginia Matter")**
> **. . .**

See **Exhibit 3**, Pgs. 17-18 (APA Article II, Section 2.1(e)) (emphasis added)

Instead, in the APA, the Old FDH Entities expressly retained all liabilities and assets relevant to the collapse of the Tower.

The APA is dated November 5, 2014, which was nine (9) months after the Tower's collapse. See **Exhibit 3**. The closing on this transaction occurred on February 13, 2015, which was over one year after the Tower's collapse. See **Exhibit 3**, Bill of Sale.

---

[2]      The Court has a complete, unredacted copy of the APA. For the purposes of this Motion and Memorandum, only the relevant portions of the APA have been attached hereto.

## STANDARD OF REVIEW

"A moving party is entitled to summary judgment if the pleadings, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Davis v. City of Shinnston, 2013 U.S. Dist. LEXIS 129165, at *6 (N.D.W. Va. Sept. 9, 2013) (citing Fed. R. Civ. P. 56(c)).   Furthermore, "[i]n applying the standard for summary judgment, the Court must review all the evidence in the 'light most favorable to the nonmoving party.'" Id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).

"In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact." Id. at 7 (citing Celotex, 477 U.S. at 323). Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Id. (citing Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The United States Supreme Court has further stated that the party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts, more than a "mere scintilla of evidence," that there is a genuine issue for trial. Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

## ARGUMENT

I.      **Velocitel was not actively negligent.**

The Plaintiff has not alleged that Velocitel was actively negligent, in any way,

in this case. Following the extensive discovery that has been conducted to date, no evidence has ever been developed to support a conclusion that Velocitel was in any way "actively negligent." Therefore, there is no genuine issue of material fact as to the existence of any active negligence of Velocitel in the events giving rise to this lawsuit. Therefore, the Plaintiff's First Amended Complaint should be dismissed on this basis.

## II.   Velocitel has no successor liability for any act or omission of old FDH.

Though he has never explicitly pled it, the Plaintiff presumably attempts to impose liability upon Velocitel as a result of its purchase of certain assets of the Old FDH Entities, which may be construed as a "successor liability" theory. However, neither the pleadings nor the evidence developed to date demonstrates anything other than the inescapable conclusion that a successor liability theory also fails, as a matter of law.

Under very limited and exacting circumstances that do not exist here, a company that was not actively liable for allegedly tortious conduct may be held liable as a successor-in-interest to another company that was negligent. In addressing successor liability, West Virginia law provides that "successor liability is analyzed under the law of the transferee corporation's state of incorporation." See State ex rel. Elish v. Wilson, 189 W. Va. 739, 434 S.E.2d 411, 416 (1993) (adopting, for issues involving the rights and liabilities of a corporation, "general rule regarding choice of law requir[ing] that the substantive law of the place of incorporation is to be applied unless another state has a more substantial connection or the application of the other state's law would be contrary to our public policy."). Cf. Savage Arms, Inc. v. Western Auto Supply Co., 18 P.3d 49, at 53 nn. 14 & 15 (Alaska 2000) (cataloguing various federal and state approaches to

choice of law in successor liability cases). <u>Carter Enterprises, Inc. v. Ashland Specialty Co., Inc.</u>, 257 B.R. 797 (2001) (S.D.W. Va. 2001).

As stated in the APA, the Purchaser of certain of the Old FDH Entities' assets is Velocitel, L.L.C., a Delaware limited liability company. <u>See</u> **Exhibit 3**, Pg. 1. Delaware law on corporate successor liability provides:

> [W]hen one company sells or otherwise transfers all of its assets to another company, the buyer generally is not responsible for the seller's liabilities, including claims arising out of the seller's tortious conduct. In limited situations, where avoidance of liability would be unjust, exceptions may apply to enable transfer of liability to the seller. Exceptions include: (1) the buyer's assumption of liability; (2) *de facto* merger or consolidation; (3) mere continuation of the predecessor under a different name; or (4) fraud.

<u>Ross v. Desa Holdings Corp.</u>, C.A. No. 05C–05–013, 2008 WL 489926013 at *4 (Del. Super. Ct. Sept. 30, 2008) (citing <u>Fehl v. S. W.C. Corp.</u>, 433 F. Supp. 939, 945 (D. Del. 1977)).

Velocitel is not liable pursuant to a successor liability theory because (1) Velocitel did not assume the Old FDH Entities' liability regarding the Tower collapse or Plaintiff's claims; (2) no *de facto* merger occurred between Velocitel and FDH; (3) Velocitel is not the "mere continuation" of the Old FDH Entities under a different name; and (4) there are no allegations or evidence of fraud on behalf of Velocitel in the context of the asset purchase.

### A. Velocitel did not assume the Old FDH Entities' liability regarding the Tower collapse or Plaintiff's claims.

The First Amended Complaint fails to allege that Velocitel assumed FDH's purported liability as to the Tower collapse and/or Plaintiff's claims. At most, the First Amended Complaint alleges (incorrectly) that Velocitel purchased FDH in 2013, and

11

then makes the conclusory allegation that Velocitel "is liable for the tortious conduct" of FDH. See First Amended Complaint, ¶5. These allegations fail as a matter of law. As noted above, and in reviewing the evidence in the light most favorable to the Plaintiff, summary judgment is appropriate here because there is no genuine issue as to any material fact that Velocitel did *not* assume FDH's liability for the Tower collapse. See Davis v. City of Shinnston, 2013 U.S. Dist. LEXIS 129165, at *6 (N.D.W. Va. Sept. 9, 2013) (citing Fed. R. Civ. P. 56(c)); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

Moreover, the purported factual underpinning for Plaintiff's claim against Velocitel is completely wrong, and this defect defeats Plaintiff's claims. First, the transaction between the Old FDH Entities and Velocitel did *not* occur in 2013—*i.e.* before the Tower collapse. Instead, the transaction closed on February 13, 2015. See **Exhibit 3**, Bill of Sale. This was more than one year after the Tower collapse. Second, the APA shows very clearly that the transaction between the Old FDH Entities and Velocitel was *not* a stock purchase agreement. Instead, it shows that Velocitel purchased some – but not all – of the Old FDH Entities' assets. Hence the name of the parties' contract, "Asset Purchase Agreement." And it is equally clear that Velocitel did *not* assume any liability that the Old FDH Entities might have regarding the Tower collapse or Plaintiff's claims. In fact, it is incontrovertible that the APA *explicitly* rejected any assumption of liability and *explicitly* provides that the Old FDH Entities retain liabilities regarding the Tower collapse and assets related to same (*e.g.*, insurance policies, and KCHM's Contract with S&S).

12

Numerous provisions from the APA defeat Plaintiff's claims against Velocitel. The APA defines the West Virginia tower collapse matter as the "West Virginia Matter" and the APA expressly makes the West Virginia Matters an "Excluded Liability." See **Exhibit 3**, Pg. 17, ¶2.1(e)(iv). The effect of that provision is that the Purchaser has no liability in connection with the West Virginia Matter.

The APA includes an Excluded Liability Schedule, Schedule 2.1(e), which likewise makes clear that the Purchaser (*i.e.* Velocitel) was not assuming the Seller's (*i.e.* the Old FDH Entities) liabilities in connection with the Tower collapse. Excluded Liabilities include:

> Any Seller's liability imposed upon any Seller by any judicial or administrative determination, ruling, decree or judgment and/or by reason of any assumption of responsibility and protection, indemnification, defense, hold free and hold harmless obligations, in each case, solely with respect to and to the extent of the West Virginia Matter, arising under applicable law, by reason by judicial and/or administrative action and/or under any or all of the following contracts and agreements:
>
> - Master Subcontract Agreement between SBA Network Services, LLC and FDH Engineering, Inc., dated October 19, 2012;
>
> - Master Subcontract Agreement between SBA Telecommunications, Inc. and FDH Engineering, Inc., dated October 19, 2012;
>
> - Master Professional Services Subcontract Agreement between SBA Telecommunications, Inc. and FDH Engineering, Inc., dated October 19, 2012;
> * * *
> - SBA Purchase Order #POZ77473 issued to FDH Engineering, Inc. dated November 7, 2013 for the cell phone tower project in Despard, West Virginia;
>
> - FDH Subcontract # T-1305631700 issued to S. and S. Communication Specialists, Inc. dated November 12, 2013 for the cell phone tower project in Despard, West Virginia.

See **Exhibit 3**, Schedule 2.1(e).

The APA was also explicit in excluding certain assets from the transaction that were relevant to the Seller's defense of potential lawsuits regarding the Tower collapse. KCHM's retention of these assets demonstrated again that the parties had no intention of Velocitel's subsidiary assuming liability for the West Virginia Matter. These assets that KCHM retained are itemized on the Excluded Assets Schedule, Schedule 2.1(c). They include the following contracts and rights, all of which are relevant to the collapse of the Tower:

- All of any Seller's insurance policies (including, for the avoidance of doubt, all insurance policies held by any Seller since the inception of any Seller and those insurance policies listed on Schedule 5.17 (Insurance Schedule)) and any and all of any Seller's rights and interests now existing or hereafter arising thereunder, including but not limited to, the following insurance policies and any and all of any Seller's rights and interests now existing or hereafter arising thereunder . . .

- The Master Subcontractor Agreement for Construction Services by and Between FDH, Inc. and S and S Communication Specialists, Inc., dated May 9, 2013.

- FDH Contract # T-1305631700 issued to S. and S. Communication Specialists, Inc. dated November 12, 2013 for the cell phone tower project in Despard, West Virginia.

- The Evidence and Site Control Agreement dated February 19, 2014 entered into between and among FDH Engineering, Inc., SBA Towers, LLC, SBA Telecommunication, LLC, S. and S. Communication Specialists, Inc. and Occupations Safety and Health Administration;

- Any and all of any Seller's rights and interest now existing or hereafter arising under insurance policies that do or may provide coverage for the West Virginia Matter;

- Any Seller's concomitant rights and interests against third-parties (other than the Purchaser Parties or the Business) arising by reason of any liability imposed on any Seller by any judicial or administrative determination, ruling, decree or judgment and/or by reason of any assumption of responsibility or protection, indemnification, defense, hold free or hold harmless obligations of any Seller solely, in each case, with respect to the West Virginia Matter, arising under applicable law, by reason of any judicial and/or administrative action and/or under any or all of the following contracts and agreements:

14

 o Master Subcontract Agreement between SBA Network Services, LLC and FDH Engineering, Inc., dated October 19, 2012;

 o Master Subcontract Agreement between SBA Telecommunications, Inc. and FDH Engineering, Inc., dated October 19, 2012;

 o Master Professional Services Subcontract Agreement between SBA Telecommunications, Inc. and FDH Engineering, Inc., dated October 19, 2012;

 o SBA Purchase Order #POZ77473 issued to FDH Engineering, Inc. dated November 7, 2013 for the cell phone tower project in Despard, West Virginia; FDH Subcontract # T-1305631700 issued to S. and S. Communication Specialists, Inc. dated November 12, 2013 for the cell phone tower project in Despard, West Virginia.

- All common law and statutory rights of indemnification, contribution and subrogation (other than, in each case, against the Purchaser Parties or the Business), now existing or hereafter arising or created under the laws of any or all relevant jurisdictions, arising out of or relating to the West Virginia Matter . . .

- . . . all defenses any Seller has or may have to any claims now existing or hereafter asserted arising out of or relating to the West Virginia Matter, regardless of the nature of such defenses and regardless of whether the defenses sound in contract, tort, strict liability, statute and/or otherwise.

- All claims any Seller has or may have against any third party . . . arising out of or relating to the West Virginia Matter . . . regardless of the nature of such claims and whether such claims sound in contract, tort, strict liability, statute and/or otherwise.

- All evidence, research, pleadings, affidavits and discovery materials that may be used to Support any claim or defense regarding the West Virginia Matter . . ., including without limitation drawings, photographs, analyses, reports, contracts, purchase orders, invoices, payment records, spreadsheets, subcontractor completed documentation, emails, letters, notes, legal research, memoranda and attorney work product.

<u>See</u> **Exhibit 3**, Schedule 2.1(c).

As shown above, the clear intention of the parties to the APA was for the Purchaser (*i.e.*, Velocitel) **not** to assume any liability in connection with the West Virginia Matter. It would be patently unreasonable to interpret the APA as imposing

upon Velocitel any liability by reason of its subsidiary's purchase of some, but not all, of the assets of the Old FDH Entities. Additionally, no evidence has ever been developed to support a conclusion to the contrary.

### B. Velocitel is not liable to Plaintiff because no *de facto* merger occurred.

As noted above, controlling law provides that, in an asset sale, the buyer generally is not responsible for the seller's liabilities, including claims arising out of the seller's tortious conduct. Successor liability may be imposed under a *de facto* merger theory. To create a *de facto* merger under Delaware law, all of the following elements must exist: "(1) one corporation [transfers] *all* of its assets to another corporation; (2) payment is made in stock, issued by the transferee directly to the shareholders of the transferring corporation; *and* (3) in exchange for their stock in that corporation, the transferee ... [assumes] all the debts and liabilities of the transferor." Xperex Corp. v. Viasystems Tech. Corp., LLC, C.A. No. 20582–NC, 2004 WL 3053649, at *2 (Del. Ch. July 22, 2004) (emphasis added).

The Plaintiff's First Amended Complaint contains merely one reference to Velocitel. As stated previously, in paragraph 5 of the Amended Complaint, the Plaintiff alleges: "In 2013, these entities [*i.e.* the Old FDH Entities] were purchased by Velocitel, Inc., which is now incorporated as FDH Velocitel. FDH Velocitel is liable for the tortious conduct of FDH Engineering, Inc., FDH Innovation and FDH, Inc. These four defendants are referred to herein jointly as 'FDH.'" See First Amended Complaint, ¶5.

The Plaintiff has failed to set forth any allegation, or develop any evidence throughout discovery, that would support a claim based on *de facto* merger theory of successor liability. This failure warrants judgment as a matter of law in favor of Velocitel.

A case in point is from the Court of Chancery of Delaware, Re: Spring Real Estate, LLC d/b/a Spring Capital Group v. Echo/RT Holdings, LLC, C.A. No. 7994–VCN, 2013 WL 6916277 (December 31, 2013). In that case, the Delaware Chancery Court used the same analysis in granting a Rule 12(b)(6) motion for failure to state a claim. The Court ruled that Spring Capital failed to allege the elements necessary for successor liability under the de facto merger theory or the continuation theory. Under the parties' purchase agreement, Echo/RT assumed certain liabilities, and RayTrans retained all other liabilities. In light of the unambiguous terms of the purchase agreement, the Chancery Court concluded that Echo/RT did not assume, and thus RayTrans retained, liability for any legal claim arising out of the conduct or operation of RayTrans on or prior to the transaction's closing date. Id. at *4.

Applying the analysis here renders the same result. In this case, the Plaintiff pleaded generalized (and incorrect) information regarding the sale but failed to plead any facts to establish a de facto merger theory for successor liability. Further there has been no evidence developed by Plaintiff of a defacto merger. The APA sets forth other liabilities that were retained by the old FDH and other assets retained. Additionally, throughout the extensive discovery conducted in this case to date, no evidence has been developed to support the viability of this theory. Consequently, the Court should enter Judgment on the Pleadings in favor of Velocitel.

### C. Velocitel is not liable to Plaintiff because Velocitel is not the mere continuation of the Old FDH Entities under a different name.

Delaware courts narrowly construe the continuation theory of successor liability, requiring the new company to be the same legal entity as the former. Xperex Corp., No. 20582–NC, 2004 WL 3053649, at *2. The test "is not the continuation of the business

17

operation; rather, it is the continuation of the corporate entity." Id. (citing Fountain v. Chevrolet Co., 1988 WL 40019, at *8–*9 (Del. Super. Ct. Apr. 13, 1988)). Imposition of successor liability is only appropriate "where the new entity is so dominated and controlled by the old company that separate existence must be disregarded." Id. (citing Elmer v. Tenneco Resins, Inc., 698 F. Supp. 535, 542 (D. Del. 1988)). The Plaintiff has failed to allege any facts that, even if taken as true, would establish that Velocitel is so dominated and controlled by the Old FDH Entities that these companies' separate existence must be disregarded. Instead, the pleadings demonstrate that the Old FDH Entities merely sold some, but not all, of its assets to Velocitel and retained assets and agreements necessary or appropriate for the Old FDH Entities' defense of possible lawsuits arising from the collapse of the Tower.

Additionally, throughout the extensive discovery conducted in this case to date, no evidence has ever been developed to support the viability of a "mere continuation" theory. No testimony was ever elicited from any member of the Old FDH Entities' upper management, which would have included Christopher Murphy, Daniel Sammartano, and Neil Kuplic, that their job responsibilities, job titles, etc. did not change. Such testimony could arguably be construed as evidence of a "mere continuation" of the FDH corporate entity. See Magnolia's at Bethany, LLC v. Artesian Consulting Engineers, Inc., 2011 WL 4826106 at *9 (Del. Super. Ct. Sept. 19, 2011). However, there was no such evidence. All the Plaintiff did was ask several employees if their jobs changed. Again, what he neglects to mention is that he did not ask Mr. Kuplic, a Vice President, or Mr. Murphy, the CEO, if either of *their* jobs changed. Mr. Murphy even volunteered that he went from CEO of old FDH to President of FDH Velocitel and left there after five (5) months.  His

18

involvement with Velocitel was as an employee, not owner.  The individuals that were set forth in the APA as key personnel were pointedly, it seems, *not* asked what changed for them. Further, Darrin Holt, one of the former majority shareholders of the Old FDH Entities, testified that he merely consulted with Velocitel on an *ad hoc* basis after the APA.  There is no basis for successor liability grounded in a "mere continuation" theory.

### D. Velocitel is not liable to Plaintiff because there are no allegations or evidence of fraud.

As discussed above, fraud can be a basis for successor liability. Ross v. Desa Holdings Corp., C.A. No. 05C–05–013, 2008 WL 489926013 at *4 (Del. Super. Ct. Sept. 30, 2008) (citing Fehl v. S. W.C. Corp., 433 F. Supp. 939, 945 (D. Del. 1977)). Here, however, the Plaintiff has failed to set forth any allegation relevant to a fraud theory of successor liability. Additionally, throughout the extensive discovery conducted in this case to date, no evidence has been developed to support the existence of any fraud on behalf of Velocitel. In fact, Christopher Murphy, former CEO of the Old FDH Entities, specifically testified that the FDH asset purchase was structured in a wholly typical manner.   See **Exhibit 4** (Chris Murphy Depo. 144:14-15; 162:13 – 164:24 (May 4, 2018)). The primary motivation for the structure concerned North Carolina's legal requirement that sixty-seven percent (67%) of an engineering entity be owned by professional engineers. Id. at 144:17-20. There was no nefarious purpose driving the structure of the transaction other than compliance with North Carolina law; absolutely no evidence has ever demonstrated to the contrary.

Moreover, Mr. Murphy testified that discussion of the sale internally took place nearly two (2) years before the accident, and there were discussions and due diligence being conducted with Velocitel months prior to the accident. After the incident, the

19

discussions continued but were more focused on key employees of the Old FDH Entities.  Further FDH set aside 15-16% of the purchase price in an escrow account for various purposes, one of which is this suit.  If it is not necessary to pay on behalf of SBA, it reverts this asset transferred to the FDH Entities.

Because of the dual absence of pleading or evidence of fraud in any form, Velocitel cannot be held liable to Plaintiff on a successor liability theory based upon this theory.

## CONCLUSION

The pleadings do not allege, nor has discovery yielded any evidence of, a viable successor liability theory against Velocitel. Velocitel did not assume the Old FDH Entities' liability regarding the Tower collapse or Plaintiff's claims. No *de facto* merger occurred as a result of the APA. Velocitel is not the mere continuation of the Old FDH Entities under a different name. And there are no allegations or evidence of fraud committed by Velocitel. Thus, there is no genuine issue of material fact to contradict any of these four inescapable conclusions.

WHEREFORE, Defendant and Third-Party Plaintiff, Velocitel, Inc. d/b/a FDH Velocitel, respectfully asks that this Honorable Court grant summary judgment in its favor; dismiss the First Amended Complaint against it, with prejudice; and for such other relief as it deems necessary.

**FDH VELOCITEL**
**By Counsel**


/s/ Peter T. DeMasters
Peter T. DeMasters (W. Va. Bar No. 7153)
Mina R. Ghantous (W. Va. Bar No. 12143)
FLAHERTY SENSABAUGH BONASSO PLLC
48 Donley Street, Suite 501
Morgantown, WV 26501
Ph:   (304) 598-0788
Fax:   (304) 598-0790
pdemasters@flahertylegal.com
mghantous@flahertylegal.com

And

/s/ Debra Tedeschi Varner
James A. Varner, Sr. (W. Va. Bar No. 3853)
Debra Tedeschi Varner (W. Va. Bar No. 6501)
Stanley A. Heflin III (W. Va. Bar No. 12745)
McNeer, Highland, McMunn & Varner, L.C.
Empire Building – 400 West Main Street
P.O. Drawer 2040
Clarksburg, WV 26302-2040
Ph:   (304) 626-1100
Fax:   (304) 623-3035

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**RANDALL MCELHANEY,**

       **Plaintiff,**

**v.**                                                    **Civil Action No. 1:15-CV-204**

**SBA COMMUNICATIONS CORP.,**
**SBA TOWERS, LLC,**
**SBA INFRASTRUCTURE, LLC,**
**SBA NETWORK SERVICES, LLC,**
**FDH VELOCITEL, FDH ENGINEERING, INC.,**
**FDH INNOVATION and FDH, INC.,**

       **Defendants.**
**And**

**FDH, INC., now known as KCHM, INC.,**
**And FDH ENGINEERING, INC., now**
**Known as KCHM and ASSOCIATES, INC.,**

       **Third-Party Plaintiffs,**

**v.**

**S&S COMMUNICATIONS SPECIALISTS,**
**INC., THE ESTATE OF KYLE**
**KIRKPATRICK, JERRY HILL and THE**
**ESTATE OF TERRY LEE RICHARDS, JR.,**

       **Third-Party Defendants,**

**And**

**VELOCITEL, INC. d/b/a FDH VELOCITEL,**

       **Third-Party Plaintiff,**
**v.**

**THE ESTATE OF TERRY LEE RICHARD, JR.,**
**THE ESTATE OF KYLE KIRKPATRICK, and**
**JERRY HILL,**

       **Third-Party Defendants.**

22

## CERTIFICATE OF SERVICE

I, Peter T. DeMasters, counsel for Defendant and Third-Party Plaintiff, Velocitel, Inc. d/b/a FDH Velocitel, do hereby certify that the foregoing **"MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT  OF VELOCITEL, INC. d/b/a FDH VELOCITEL"** were electronically filed this 17th day of September, 2018, with the Clerk of Court using the CM/ECF system, and notification was sent to the following attorneys of record:

Allan N. Karlin, Esquire
Jane E. Peak, Esquire
Allan N. Karlin & Associates
174 Chancery Row
Morgantown, WV 26505
*Counsel for Plaintiff, Autumn Kirkpatrick, in her capacity as Administratrix of the Estate of Kyle Kirkpatrick and Co-Counsel for Plaintiffs, J. Ron Wright, in his capacity as Administrator of the Estate of Terry Lee Richard, Jr., Jerry Hill*

Damon L. Ellis, Esquire
Jonathan R. Mani, Esquire
Mani Ellis & Layne, PLLC
P.O. Box 1266
Charleston, WV 25325-1266
*Counsel for Plaintiff, Randall McElhaney, and Co-Counsel for Plaintiffs J. Ron Wright, in his capacity as Administrator of the Estate of Terry Lee Richard, Jr., and Jerry Hill*

Philip J. Sbrolla, Esquire
Matthew C. Schrebe, Esquire
Cipriani & Werner, P.C.
1144 Market Street, Suite 300
Wheeling, WV 26003
*Counsel for Defendants, SBA Communications Corporation d/b/a SBA Network Services, LLC, SBA Towers, LLC, SBA Towers, Inc., and SBA Infrastructure, LLC, and Plaintiffs, SBA Telecommunications, LLC, as successor in interest to SBA Telecommunications, Inc. and SBA Towers, LLC*

S&S Communication Specialists, Inc.
418 West Main
Hulbert, OK 74401
Third-Party Defendant

23

*(no longer represented by counsel in Civil Action Nos. 1:15-CV-204, 1:15-CV-205, 1:15-CV-206 and 1:15-CV-207)*

Grant H. Hackley, Esquire
Paul D. Krepps, Esquire
Marshall Dennehey Warner
Coleman & Goggin
600 Grant Street, Suite 2900
Pittsburgh, PA 15219
*Counsel for Third-Party Defendant, S&S Communication Specialists, Inc. (in Civil Action Nos. 1:15-CV-228 and 1:16-CV-24, only)*

/s/ Peter T. DeMasters
Peter T. DeMasters (W. Va. Bar No. 7153)

24